IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

XCOAL ENERGY & RESOURCES,    )
   )
   Plaintiff,    )
   )   C.A. No.
   v.    )
   )
SOUTHERN COAL SALES    )
CORPORATION, A & G COAL    )
CORPORATION, VIRGINIA FUEL    )
CORPORATION, TAMS    )
MANAGEMENT, INC., BLACK RIVER    )
COAL, LLC, JUSTICE LOW SEAM    )
MINING, INC., SOUTHERN COAL    )
CORPORATION, and JAMES C.    )
JUSTICE, II,    )
   )
   Defendants.

## COMPLAINT

Plaintiff, Xcoal Energy & Resources ("Xcoal"), through its undersigned counsel, states as

follows for its Complaint against Defendants, Southern Coal Sales Corporation ("SCS"), A & G

Coal Corporation ("A&G"), Virginia Fuel Corporation ("VFC"), Tams Management, Inc.

("Tams"), Black River Coal, LLC ("Black River"), Justice Low Seam Mining, Inc. ("Low

Seam"), Southern Coal Corporation ("SCC") and James C. Justice, II ("Justice") (collectively,

"Defendants").

## I. INTRODUCTION

1.     On August 28, 2013, Xcoal and SCS entered into a Coal Supply Agreement

("CSA"), pursuant to which    **REDACTED**

August 28, 2013, Xcoal entered into a Letter Agreement with SCS, A&G, VFC, Tams, Black

River and Low Seam, whereby    **REDACTED**

"Letter Agreement"). In consideration of, and in order to induce Xcoal to enter into the CSA and Letter Agreement, SCC and Justice executed a Performance Guarantee Agreement ("Guarantee"), thereby unconditionally guaranteeing prompt payment and full performance under the aforementioned agreements.[1]

2. As set forth herein, Defendants have substantially and materially breached their respective obligations under the CSA, the Letter Agreement and the Guarantee by, *inter alia*, failing to deliver the quantity or quality of coal set forth in the CSA, failing to maintain the amount of collateral required under the Letter Agreement, and failing to honor the obligations under the Guarantee.

3. Defendants' failure to honor their respective obligations under these agreements has resulted and will continue to result in substantial damages to Xcoal absent redress by this Court.

## II. PARTIES

4. Xcoal is a Pennsylvania limited partnership with its principal place of business located in Latrobe, Pennsylvania.

5. SCS, upon information and belief, is a Delaware corporation with its principal place of business located in Roanoke, Virginia.

6. A&G, upon information and belief, is a Virginia corporation with its principal place of business located in Roanoke, Virginia.

7. VFC, upon information and belief, is a Delaware corporation with its principal place of business located in Roanoke Virginia.

---

# REDACTED

-2-

8.    Tams, upon information and belief, is a West Virginia corporation with its principal place of business located in Roanoke, Virginia.

9.    Black River, upon information and belief, is a Delaware corporation with its principal place of business located in Roanoke, Virginia.

10.    Low Seam, upon information and belief, is a West Virginia corporation with its principal place of business located Roanoke, Virginia.

11.    SCC, upon information and belief, is a Delaware corporation with its principal place of business located in Roanoke, Virginia.

12.    Justice, upon information and belief, is a resident of West Virginia.

### III.  JURISDICTION AND VENUE

13.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332, in that Xcoal and Defendants are citizens of different states, and the sum in controversy exceeds $75,000.00, exclusive of interest and costs.

14.    Venue in this jurisdiction is proper pursuant to 28 U.S.C. § 1391, as certain of the Defendants are incorporated in Delaware,

# REDACTED

# REDACTED

15.

## IV. THE AGREEMENTS

A.   The Terms of the CSA

16.   On August 28, 2013, Xcoal and SCS entered into the CSA, which provides for the sale of certain qualities and quantities of metallurgical grade coal by SCS to Xcoal.

17.

18.

19.

# REDACTED

20.

21.

**REDACTED**

22.

23.

24.    Contemporaneous with the execution of the CSA, Xcoal also entered into the

Letter Agreement,

**REDACTED**

**REDACTED**

_____
2

**B.**     **The Letter Agreement**

25.     On August 28, 2013, the parties entered into the Letter Agreement, which is by, between and among SCS as "Borrower," A&G, VFC, Tams, Black River and Low Seam as "Pledgors," and Xcoal as "Lender."

26.     As the Lender under the Letter Agreement, Xcoal provided a                line of credit to SCS, as the Borrower.

27.

**REDACTED**

28.

-6-

29.

30.                              REDACTED

31.


                                      REDACTED

32.

**REDACTED**

C.     The Guarantee

33.     On August 28, 2013, SCC and Justice issued the Guarantee, for "value received, and in consideration of, and in order to induce" Xcoal to enter into the CSA and Letter Agreement.

34.     Pursuant to the Guarantee, SCC and Justice agreed as follows:

**REDACTED**

35.

**REDACTED**

## V. DEFENDANTS' BREACH OF THE AGREEMENTS

### A.   SCS's Breach of the CSA

36.   Beginning in September 2013, Xcoal began providing SCS with the delivery schedules required under Article 3.6 of the CSA.

37.   It quickly became apparent, however, that SCS was either unable or unwilling to timely supply the quantity and quality of coal required under the CSA.

38.   Though Xcoal provided SCS with sufficient rail permits to load all of the coal scheduled for delivery, SCS persistently failed to deliver the required coal in a timely manner, or frequently at all.

39.   By early March 2014, SCS had fallen significantly behind in delivering the quantity of coal required under the CSA.

40.   Xcoal attempted to work with SCS to allow it to "catch up" on its late deliveries. Specifically, on March 9, 2014, at SCS's request, Xcoal provided all necessary rail permits for SCS to cure the significant shortfalls in its performance under the CSA.

41.   Nevertheless, by the end of March 2014, SCS had still failed to supply a substantial and significant amount of the coal properly scheduled for delivery by Xcoal.

42.   SCS's failure to timely deliver the required coal has significantly impacted Xcoal's operations.

43.   As SCS is well aware, in reliance on SCS's obligation to supply the coal required under the CSA, Xcoal made significant commitments to export such coal under contracts with third party purchasers. Due to SCS's breach of its contractual obligations, Xcoal has been forced to purchase substitute coals at higher prices to replace the coal due from SCS.

44.   Furthermore, in order to transport the coal purchased from SCS to its export customers, Xcoal must first ship the coal by rail from the designated loadout points to an export

terminal. The coal is then loaded onto vessels for export. As a result of SCS's failure to timely supply the required coal, Xcoal has incurred significant rail and vessel demurrage.

45.    In addition to SCS's failure to deliver the quantity of coal required by the CSA, and failure to deliver the coal in a timely manner, the overwhelming majority of the coal that was actually delivered to Xcoal failed to meet the minimum coal quality specifications set forth in Exhibit A to the CSA. This, in turn, has impacted Xcoal's export efforts, often requiring Xcoal to take extraordinary measures to ensure that it delivers the required specification of coal to its customers.

46.    With no improvement in SCS's performance forthcoming, on April 10, 2014, Xcoal issued a notice of default to SCS

**REDACTED**

47.

**REDACTED**

**B.    The Breach of the Letter Agreement**

48.    Two days after entering into the Letter Agreement, on August 30, 2014, SCS requested an advance against the line of credit **REDACTED** Xcoal complied with this request, and advanced said sum to SCS under the terms of the Letter Agreement.

49.     As set forth above, SCS is required to maintain coal as "Collateral" to secure

payment under the Letter Agreement,                                        **REDACTED**

**REDACTED**                              (Letter Agreement, § 1).

50.     In connection with this collateral requirement, on March 31, 2014, SCS issued a

Collateral Report and Borrower's Warehouse Receipts which represented that the total coal

qualified to be treated as Collateral for purposes of the Borrowing Base under the Letter

Agreement on that date was            net tons of coal.

51.     However, surveys performed of Defendants' facilities on behalf of Xcoal on April

1, 2, and 3 of 2014 indicated that a total of only          tons of coal qualified to be treated as

Collateral under the Letter Agreement, which was far less than required by the Letter Agreement.

52.     The very substantial overstatements by Defendants is due to Defendants'

treatment of coal "in the pit" as Collateral.  Such coal, however, must still be mined, processed,

and placed in Stockpiles to qualify as Collateral under the terms of the Letter Agreement.

53.

**REDACTED**

54.     In addition to significantly inflating the amount of coal available as Collateral,

SCS's Collateral Report also used incorrect pricing data, thereby further inflating the value of the

coal identified by SCS as Collateral.

55.     On April 10, 2014, Xcoal issued a notice of default of the Letter Agreement to

Defendants,

**REDACTED**

**REDACTED**

A true and correct copy of the April 10, 2014 letter providing notice of default under the Letter Agreement is attached hereto as Exhibit 4.

**C.  The Breach of the Guarantee**

56.  Contemporaneous with its issuance of the April 10, 2014 notices of default for the CSA and the Letter Agreement, and in accordance with the terms of the Guarantee, Xcoal issued a separate letter advising SCC and Justice that

**REDACTED**

A true and correct copy of the April 10, 2014 letter concerning the Guarantee is attached hereto as Exhibit 5.

57.  The noticed defaults were not cured within the requisite time period, and SCC and Justice have failed and refused to honor their respective obligations under the Guarantee.

**D.  Defendants' Response**

58.  Both default notices issued with respect to the CSA and Letter Agreement (Exhibits 3 and 4) provided SCS and the other Defendants with the required opportunity to cure their defaults under these agreements.  Instead of attempting to cure, however, SCS responded by issuing a flurry of letters making it clear that SCS and the Defendants will not cure these material defaults and, in one letter, SCS purports to terminate the CSA effective April 10, 2014.

**COUNT I --- BREACH OF THE CSA**
**(Xcoal v. SCS)**

59.  Xcoal incorporates by reference the preceding paragraphs as if set forth at length herein.

60.   Xcoal has fulfilled all duties, obligations and conditions precedent with regard to enforcement of the CSA.

61.   As set forth in detail above, SCS has substantially and materially breached the terms of the CSA by failing and refusing to deliver the quantity and quality of coal required under the terms of the CSA.  Furthermore, SCS's substantial and material breach of the Letter Agreement, as described herein, also constitutes an Event of Default under the terms of the CSA.

62.   Despite demand, SCS has failed and refused to remedy the above breaches, and has defaulted and repudiated its obligations under the CSA.

63.   Xcoal has and will continue to suffer substantial damages as a result of SCS's breach, default and repudiation of the CSA as set forth above.

## COUNT II – BREACH OF THE LETTER AGREEMENT
### (Xcoal v. SCS, A&G, VFC, Tams, Black River, and Low Seam)

64.   Xcoal incorporates by reference the preceding paragraphs as if set forth at length herein.

65.   Xcoal has fulfilled all duties, obligations and conditions precedent with regard to enforcement of the Letter Agreement.

66.   As set forth in detail above, Defendants SCS, A&G, VFC, Tams, Black River, and Low Seam have substantially and materially breached the terms of the Letter Agreement by failing to maintain the amount of coal required as Collateral under the Agreement, and materially misrepresenting the amount and value of coal available as Collateral.  Furthermore, SCS's substantial and material breach of the CSA, as described herein, also constitutes an Event of Default under the Letter Agreement.

67.   Despite demand, SCS has failed and refused to remedy the above breaches, and has defaulted and repudiated its obligations under the Letter Agreement.

68.     Under the terms of the Letter Agreement, the entire outstanding balance of the amount loaned to SCS is indisputably due and owing to Xcoal.

## COUNT III -- BREACH OF THE GUARANTEE
### (Xcoal v. SCC and Justice)

69.     Xcoal incorporates by reference the preceding paragraphs as if set forth at length herein.

70.     Xcoal has fulfilled all duties, obligations and conditions precedent with regard to enforcement of the Guarantee.

71.     As set forth in detail above, SCC and Justice have failed and refused to honor their respective obligations under the Guarantee to "unconditionally" guarantee full and prompt payment and performance of all obligations under the now breached and repudiated CSA and Letter Agreement. As such, SCC and Justice have substantially and materially breached the terms of the Guarantee.

72.     Despite demand, SCC and Justice have failed and refused to remedy the above breaches, and have defaulted and repudiated their obligations under the Guarantee.

73.     Xcoal has and will continue to suffer substantial damages as a result of SCC's breach, default and repudiation of the Guarantee as set forth above.

**WHEREFORE**, Plaintiff Xcoal respectfully requests that this Court enter judgment in its favor and against Defendants as follows:

(a)     Awarding Xcoal damages in an amount in excess of $75,000.00, exclusive of interest and costs, resulting from Defendants' breach, default and repudiation of the CSA, Letter Agreement and Guarantee; and

(b)     Awarding Xcoal such other and further damages and relief as is just and proper, including pre- and post-judgment interest, costs, expenses, disbursements and attorneys' fees.

Respectfully submitted,

By: /s/Geoffrey G. Grivner
    Geoffrey G. Grivner (Del. Id. No. 4711)
    BUCHANAN INGERSOLL & ROONEY PC
    919 North Market Street, Suite 1500
    Wilmington, Delaware 19801-3046
    Telephone: (302) 522-4200
    Facsimile: (302) 522-4295
    Email: geoffrey.grivner@bipc.com

    OF COUNSEL:
    Bruce A. Americus
    BUCHANAN INGERSOLL & ROONEY PC
    One Oxford Centre, 20th Floor
    301 Grant Street
    Pittsburgh, PA 15219
    Telephone: (412) 562-8800
    Facsimile: (412) 562-1041
    Email: bruce.americus@bipc.com

    *Counsel for Plaintiff, Xcoal Energy & Resources*

DATED: April 11, 2014